**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NIARA BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN WETZEL, Secretary of the | ) | |
| Pennsylvania Department of Corrections; | ) | |
| BRENDA TRITT, Superintendent of SCI | ) | |
| Frackville; TREVOR WINGUARD, | ) | |
| Superintendent of SCI Somerset; | ) | Case No. |
| MICHAEL HARLOW, Former | ) | |
| Superintendent of SCI Albion; OFFICER | ) | |
| SINICKY, Corrections Officer at SCI | ) | |
| Albion; OFFICER DARAMO, | ) | |
| Corrections Officer at SCI Albion; | ) | |
| OFFICER SPARKS, Corrections Officer | ) | |
| at SCI Albion; OFFICER MARK | ) | |
| PHILLIPI, Corrections Officer at SCI | ) | |
| Somerset; OFFICER JOHN DOE 1, | ) | |
| Corrections Officer at SCI Somerset; | ) | |
| OFFICER JOHN DOE 2, Corrections | ) | |
| Officer at SCI Somerset; SERGEANT | ) | |
| MANES, Corrections Officer at SCI | ) | |
| Frackville; OFFICER KROPP, | ) | |
| Corrections Officer at SCI Frackville, | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

Plaintiff Niara Burton is a transgender woman who has been incarcerated in

seven different male prisons by the Pennsylvania Department of Corrections

("DOC") for the past four years.  The risk of harm to a feminine-presenting

transgender woman in all-male facilities is obvious and well-documented and yet the DOC has failed to take adequate action to stop ongoing abuses against Ms. Burton.

During her incarceration, Ms. Burton has been subjected to pervasive sexual harassment and abuse because of her gender-related appearance, gender identity and transgender status – including being raped by another prisoner and forced by a guard to perform oral sex.  The harm to Ms. Burton is the direct result of the Department of Correction's failure to adequately implement policies and training to ensure the safety and privacy of transgender women inmates.  Neglecting their clear constitutional obligations as well as the clear requirements set forth under the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601, *et seq.*, the DOC has failed to prevent foreseeable, ongoing and severe harm to Ms. Burton.  It has been more than 12 years since Congress passed PREA to prevent the harm that Ms. Burton suffered by requiring prisons to adopt standards designed to detect and prevent sexual abuse and harassment.  The Department of Corrections, however, has failed to implement PREA's requirements with respect to transgender inmates or take constitutionally required steps to prevent foreseeable harm to Ms. Burton.

Ms. Burton brings this action seeking compensatory damages, declaratory relief and injunctive relief pursuant to 42 U.S.C. § 1983 against various prison officials throughout the DOC for depriving her of her rights guaranteed by the

Eighth and Fourteenth Amendments to the United States Constitution.

## PARTIES

1.     Ms. Burton is a 28-year-old transgender woman currently incarcerated in the State Correctional Institution at Frackville ("SCI Frackville"), a maximum security men's prison operated by the Pennsylvania Department of Corrections.

2.     Defendant John Wetzel is, and was at all times relevant to this Complaint, the Secretary of the Pennsylvania Department of Corrections and maintains an office in Mechanicsburg, Pennsylvania.   Defendant Wetzel is responsible for the oversight, operation, and administration of the Commonwealth's correctional system including the implementation of training and policies regarding sexual abuse and harassment.  He is being sued in his official capacity.

3.     Defendant Brenda Tritt is the Superintendent of SCI Frackville. Defendant Tritt is responsible for the oversight, operation, and administration of SCI Frackville including the implementation of training and policies regarding sexual abuse and harassment.   Defendant Tritt is being sued in her official capacity.

4.     Defendant Trevor Winguard is the Superintendent of SCI Somerset. Defendant Winguard is responsible for the oversight, operation and administration of SCI Somerset including the implementation of training and policies regarding

sexual abuse and harassment.  Defendant Winguard is being sued in his individual capacity.

5.      Defendant Michael Harlow was the Superintendent at SCI Albion during Ms. Burton's incarceration there.   He was responsible for the oversight, operation and administration of SCI Albion including the implementation of training and policies regarding sexual abuse and harassment.  Defendant Harlow is being sued in his individual capacity.

6.      Defendant Corrections Officer Sinicky was at all times relevant to this Complaint an employee of the DOC serving as a corrections officer at SCI Albion. He is being sued in his individual capacity.

7.      Defendant Corrections Officer Daramo was at all times relevant to this Complaint an employee of the DOC serving as a corrections officer at SCI Albion.  He is being sued in his individual capacity.

8.      Defendant Corrections Officer Sparks was at all times relevant to this Complaint an employee of the DOC serving as a corrections officer at SCI Albion. He is being sued in his individual capacity.

9.      Defendant Corrections Officer Mark Phillipi was at all times relevant to this Complaint an employee of the DOC serving as a corrections officer at SCI Somerset.  He is being sued in his individual capacity.

10.     Defendant Corrections Officer John Doe 1 was at all times relevant to

this Complaint an employee of the DOC serving as a corrections officer at SCI Somerset.  He is being sued in his individual capacity.

11.    Defendant Corrections Officer John Doe 2 was at all times relevant to this Complaint an employee of the DOC serving as a corrections officer at SCI Somerset.  He is being sued in his individual capacity.

12.    Defendant Sergeant Manes was at all times relevant to this Complaint an employee of the DOC serving as a corrections officer at SCI Frackville.  He is being sued in his individual capacity

13.    Defendant Corrections Officer Kropp was at all times relevant to this Complaint an employee of the DOC serving as a corrections officer at SCI Frackville.  He is being sued in his individual capacity.

14.    Defendants were at all relevant times acting under color of state law.

## JURISDICTION AND VENUE

15.    Ms. Burton brings this action pursuant to the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

16.    This Court has jurisdiction under 28 U.S.C. § 1331 over the constitutional claims, as well as those arising under 42 U.S.C. § 1983.

17.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred in Schuylkill County, Pennsylvania, the Plaintiff and some Defendants reside there, and because Defendant Wetzel's

principal office is in Mechanicsburg, Pennsylvania, all of which are within the Middle District.

## FACTUAL BACKGROUND

18.    Plaintiff Niara Burton has been incarcerated within the Pennsylvania Department of Corrections ("DOC") since November 2012 under the name of Herman Burton.

19.    Ms. Burton was assigned the sex of male at birth.

20.    Ms. Burton is a woman.

21.    Ms. Burton has lived as and presented her female gender since she was a teenager.

22.    Her appearance and mannerisms are female; she wears her hair in feminine styles and has visible breasts.

23.    Ms. Burton has been on hormone therapy since she was sixteen and has continued these medications during her incarceration within the DOC.

24.    Throughout her incarceration she has been housed in only men's prisons.

**A.    Sexual Harassment at SCI Camp Hill**

25.    Ms. Burton was incarcerated at SCI Camp Hill from December 2012 until approximately April 2013.

26.    Correctional officers and inmates repeatedly harassed her based on

her gender-related appearance, gender identity, and transgender status.

27.   Throughout her time at SCI Camp Hill, Ms. Burton was forced to shower at the same time as other inmates in a group shower without separate stalls.

28.   Ms. Burton reported to DOC officials that showering at the same time as other inmates made her feel uncomfortable and unsafe; however, no arrangements were made to protect her.

**B.    Sexual Harassment at SCI Fayette**

29.   Ms. Burton was incarcerated at SCI Fayette in 2013.

30.   Correctional officers at SCI Fayette frequently made vulgar comments to her in front of other inmates, telling her to "suck my dick," stating that she was their "little bitch," and commenting that she was "high beaming" everyone with her breasts.

31.   She was repeatedly forced by corrections officers to walk to the shower without a towel or shirt to cover her breasts.

32.   On more than one occasion, guards announced to the inmates on her cell block "Get on the gates, tits are walking," indicating that the inmates should come to their cell doors to watch her walk to the shower.

33.   This harassment continued despite multiple reports by Ms. Burton of the inappropriate conduct directly to DOC officials and through the sexual abuse hotline as instructed by DOC abuse policies.

34.     Upon information and belief, calls made to the sexual abuse hotline are reviewed by the State Police and then forwarded to the relevant DOC institution for further investigation.

35.     Upon information and belief, these reports are not confidential and correctional officers can be informed when an inmate has made a complaint against them.

**C.      Sexual Abuse and Harassment at SCI Huntingdon**

36.     Ms. Burton was transferred to SCI Huntingdon after her incarceration at SCI Fayette.

37.     During the few weeks she was incarcerated there, she was consistently subjected to derogatory comments based on her gender-related appearance, gender identity and transgender status by both guards and inmates.

38.     Moreover, she was required to shower at the same time as other inmates in a group shower without individual stalls.

**D.      Sexual Abuse and Harassment at SCI Albion**

39.     On or about January 21, 2014, Ms. Burton was transferred to SCI Albion.

40.     At SCI Albion corrections officers and other inmates referred to her as a "faggot" on an almost daily basis.

41.     Corrections officers, including Defendants Sparks and Sinicky,

regularly made sexual remarks in front of other inmates regarding Ms. Burton's body, stating that she had a "fat ass" and telling her that she needed to "cover those big ass things up" referring to her breasts.

42.    Defendant Sinicky would also order her to show him her bra.

43.    Ms. Burton overheard Defendant Sinicky telling other inmates he wanted to have sex with her.

44.    On multiple occasions, male corrections officers, including Defendants Sinicky and Daramo, groped her breasts while performing pat down searches, sometimes in front of other inmates.

45.    Defendant Sparks would also touch her inappropriately, hugging her from behind in a sexual manner.

46.    Defendants Sinicky, Sparks and Daramo intentionally engaged in this unwanted and grossly inappropriate verbal and physical sexual abuse to humiliate, harass, degrade or arouse Ms. Burton, or to gratify their own sexual desire.

47.    Ms. Burton provided the Security Department at SCI Albion with multiple written statements detailing the sexual harassment and sexual abuse she was suffering and frequently called the sexual abuse hotline.

48.    Despite these reports, none of the guards at SCI Albion were disciplined or otherwise reprimanded for their inappropriate behavior toward Ms. Burton.

49.     This pattern of sexual harassment and abuse continued throughout Ms. Burton's incarceration at SCI Albion.

50.     Ms. Burton was also subjected to harassment from other male inmates.

51.     Inmates entered her cell without her knowledge and hid under her bed, waiting to surprise her and attack her when she returned to her cell.

52.     After realizing someone else was in her cell she would scream and buzz the intercom for the corrections officers on her unit.

53.     In the fall of 2014, Defendant Sparks entered Ms. Burton's cell.

54.     He threatened to give her a misconduct if she refused to perform oral sex on him.

55.     Fearing for her safety, Ms. Burton complied with Defendant Sparks' demands.

56.     Before he left her cell, Defendant Sparks threatened to kill her if she told anyone what had happened.

57.     Despite the threat by Defendant Sparks, Ms. Burton did report the assault to DOC officials but received no response.

58.     Ms. Burton attempted to press criminal charges against Defendant Sparks in December 2014 while still incarcerated at SCI Albion.

59.     As of November 2015, the DOC was continuing to investigate Ms.

Burton's allegations regarding this sexual assault.

60.    At the time of the filing of this Complaint, Ms. Burton has not received any response regarding the findings of this investigation.

**E.    Sexual Abuse and Harassment at SCI Somerset**

61.    On or about January 13, 2015, Ms. Burton was transferred to SCI Somerset.

62.    At SCI Somerset, Ms. Burton experienced daily sexual harassment from corrections officers and other inmates.

63.    As a further affront, all of her requests to be referred to with female pronouns and modifiers were ignored.

64.    Corrections officers at SCI Somerset regularly referred to Ms. Burton as "he/she" and "it" as well as other derogatory phrases.

65.    Ms. Burton also experienced harassment on the basis of her gender-related appearance, gender identity, and transgender status when attempting to take a shower at SCI Somerset.

66.    For example, in May 2015, Ms. Burton was not allowed to take a shower because she refused to walk to the shower undressed.

67.    In July 2015, Defendant Phillippi repeatedly harassed Ms. Burton by staring at her lasciviously while she was showering, denying her a towel after her shower and continuing to leer at her as she stood nude.

68.     When Ms. Burton reported these incidents to DOC officials, the investigation into one of her complaints found her claims "unfounded" as "visual observations are expected in the course of security duties and are not considered sexual abuse."

69.     This finding is contrary to PREA regulations, which prohibit cross-gender viewing during showers and requires that transgender prisoners be given the opportunity to shower separately.

70.     Throughout her incarceration at SCI Somerset, Ms. Burton was repeatedly pat- and strip-searched by male corrections officers, including Defendant Phillipi.

71.     On at least one occasion, Defendant Phillipi initiated a strip search of Ms. Burton by ordering her to "get undressed so I can see those big tits."

72.     Defendant Phillipi intentionally conducted these searches in an inappropriate manner to humiliate, harass, degrade or arouse Ms. Burton or to gratify his own sexual desire.

73.     Ms. Burton reported these strip searches and Defendant Phillipi's comments to the appropriate DOC officials.

74.     On or about May 24, 2015, Ms. Burton submitted a Request to Staff form to SCI Somerset's Corrections Classification Program Manager, Mr. Joseph, complaining about the DOC's failure to abide by PREA standards for cross-gender

searches.

75.    In her request form, Ms. Burton noted that she was repeatedly strip-searched by male corrections officers.

76.    Upon information and belief, Mr. Joseph was in charge of PREA compliance and investigations at that time.

77.    Mr. Joseph responded, stating only that, "The facility is in compliance with PREA."

78.    Ms. Burton has had a documented medical need for gender-affirming surgery since before her incarceration in 2012.

79.    During her incarceration at SCI Somerset, Ms. Burton began requesting gender-affirming surgery.

80.    Every time she inquired into the status of this request, she was informed by various prison officials that the decision was being considered by the central office.

81.    In one request form to the medical director regarding the continued denial of her gender affirming surgery, Ms. Burton described the constant harassment she was experiencing and the depression she was feeling as a result of her continued incarceration in male facilities.

82.    In May 2015, Ms. Burton was housed in the A pod in the Restricted Housing Unit ("RHU") as the result of a minor disciplinary infraction.

83.     One evening, Ms. Burton awoke to a masked inmate in her cell.

84.     He told her to "shut the fuck up" and threatened to kill her if she screamed.

85.     He demanded that she perform oral sex on him.

86.     After the oral sex, he choked and raped her.

87.     During the rape, Defendants John Doe 1 and John Doe 2 were the corrections officers on duty in the RHU.

88.     It was their responsibility to ensure the safety of all inmates in the RHU.

89.     It was Defendants Doe 1 and Doe 2's duty to ensure that all cell doors in the RHU remain locked overnight for the protection of the inmates.

90.     Despite this rule, the cell doors of Ms. Burton and her attacker were unlocked, providing her attacker with the opportunity to attack and sexually assault her.

91.     Ms. Burton reported this rape to DOC officials.

92.     Her rapist eventually revealed his identity to her and began threatening and extorting her.

93.     Ms. Burton reported these incidents to DOC officials and the Pennsylvania State Police.

94.     Ms. Burton repeatedly begged prison officials to transfer her to a

women's prison for her safety and mental well-being. She did this both verbally and in writing, including an August 2015 Request form to Deputy Superintendent Hainesworth.

**F.      Sexual Abuse and Harassment at SCI Frackville**

95.      On or around November 10, 2015, Ms. Burton was transferred to SCI Frackville.

96.      Ms. Burton has continued to experience sexual harassment at SCI Frackville.

97.      Medical staff have made derogatory comments to Ms. Burton regarding her gender identity and disregarded her medical concerns.

98.      Corrections officers have frequently referred to her as "faggot," "he-she" and "sweetie" in front of other inmates.

99.      Corrections officers make it a point to refer to Ms. Burton as "Mr. Burton," emphasizing "Mr." when their common practice is to refer to all inmates by their last name only without salutation.

100.      Corrections officers have also made threatening comments based on her gender identity including stating that "somebody outta shoot you in the head."

101.      At least one corrections officer on her housing unit would target Ms. Burton and another transgender inmate for additional harassment and scrutiny during cell searches.

102.   Male officers, including Defendants Manes and Kropp, have performed pat- and strip- searches of her in an inappropriate manner.

103.   For instance, during a pat search of Ms. Burton, Defendant Manes stood so close to her that she could feel his erect penis on her back.

104.   When she tried to step away from him, he threatened to discipline her.

105.   Before one pat-search, Defendant Kropp stated, "You should like this one," and then fondled her breasts while conducting the search.

106.   Defendants Manes and Kropp intentionally engaged in this unwanted and grossly inappropriate verbal and physical sexual abuse to humiliate, harass, degrade or arouse Ms. Burton, or to gratify their own sexual desire.

107.   Inmates have constantly harassed Ms. Burton at SCI Frackville, including one inmate who bit her when she refused his advances.

108.   Due to the lack of privacy in her cell, inmates can watch her change clothes.

109.   Ms. Burton has repeatedly noticed inmates masturbating in their cells as they watch her.

110.   When she reported this behavior to a DOC staff member, the inmates were not disciplined and nothing was done to provide her with greater protection. Instead, the staff member blamed Ms. Burton for drawing their attention.

111.   Despite repeated requests to shower in private, Ms. Burton is required

to shower at the same time as other inmates.

112.   Due to Ms. Burton's height, the shower stall door is below her breasts, allowing inmates showering at the same time or waiting in line to shower to view her breasts.

113.   Inmates in their cells on the second tier can also look down and watch Ms. Burton in the shower.

114.   Ms. Burton has experienced pervasive sexual harassment and abuse at the hands of corrections officers and inmates at every men's prison where she has been housed, with the exception of SCI-Graterford, where she was housed for one week.

115.   Inmates have routinely grabbed her buttocks or breasts, at every institution where she has been housed and they have not been disciplined.

116.   This widespread abuse has placed Ms. Burton in a constant state of fear for her safety.

117.   Ms. Burton has repeatedly requested a transfer to a women's prison, which is consistent with her gender identity.   She strongly believes, and has told DOC staff, that she would be safer housed in a women's prison.

118.   Upon information and belief, some prison officials and her former DOC psychologist have expressed support for housing her in a women's prison, yet she has never been transferred.

119.   DOC Policy requires that the Gender Review Committee ("GRC"), consisting of at least five DOC officials, meet with transgender inmates and evaluate their housing needs.   *See* DC-ADM 008, Prison Rape Elimination Act (PREA) Procedures Manual, Section 9.B.3.

120.   Contrary to this policy, Ms. Burton has never met with the GRC when it has convened to discuss her placement.

121.   Instead, on two occasions at SCI Somerset and two occasions at SCI Frackville, Ms. Burton met with the Corrections Classification Program Manager, who asked her a perfunctory list of questions regarding whether she feels safe in her current housing.

122.   Ms. Burton has repeatedly stated in these meetings that she does not feel safe in men's prisons and has requested a transfer to a women's prison.

123.   DOC Policy requires that the inmate be informed of the GRC's recommendations for appropriate housing and be provided with an opportunity to object.   *See* DC-ADM 008, Section 9.B.3.

124.   Despite this, Ms. Burton has never received any notice or information from the GRC regarding their evaluation of her housing placement.

125.   As a result of the pervasive sexual abuse and harassment she has endured, Ms. Burton regularly suffers from nightmares and anxiety attacks that cause her chest pain.

**G.      Pennsylvania DOC Fails to Meet the Standards Established by PREA**

126.   PREA sets forth national standards that correctional institutions must implement to prevent rape in prisons and requires that all agencies "shall have a written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment."  28 C.F.R. §115.11.

127.   Defendants Wetzel, Tritt, Winguard and Harlow were or are responsible for implementing policies pursuant to PREA for the DOC and the respective prisons they administer.

128.   PREA standards state that "[b]eing transgender is a known risk factor for being sexually victimized in confinement settings."

129.   Accordingly, PREA standards require that facility, housing, and programming assignments be made on a case-by-case basis and that decisions about such assignments, including whether to assign a transgender individual to a male or female facility, be based on an individualized assessment.

130.   Under the PREA standards, these assessments must consider the inmate's gender identity and give serious consideration to the inmate's own views with respect to safety.  28 C.F.R. §115.42(c), (e).

131.   PREA directs that these housing determinations must be reassessed at least twice a year to review any threats to the inmate's safety. 28 C.F.R. §115.42(d).

132.   Defendants Wetzel, Tritt, Winguard and Harlow have failed to implement adequate procedures to conduct individualized evaluations and determine whether transgender inmates should be placed in institutions consistent with their gender identity.

133.   Upon information and belief, no individualized evaluation and assessment of Ms. Burton's placement needs has been completed during her four-year incarceration within the Pennsylvania Department of Corrections' system.

134.   Pursuant to PREA, at no time may an institution search or examine a transgender inmate for the sole purpose of determining the inmate's genital status. 28 C.F.R. §115.15(e).

135.   Despite this, corrections staff, under the supervision of Defendants Wetzel and Winguard, have requested Ms. Burton comply with a medical examination for the purpose of determining her genital status.

136.   PREA places significant limits on cross-gender viewing and searches, including proscription of cross-gender pat-down searches. 28 C.F.R. §115.15(a).

137.   Under this regulation, searches of transgender female inmates can only be carried out by male staff under exigent circumstances or if the inmate states that she is more comfortable being searched by a male than a female. Otherwise, such searches must be carried out by female staff or a medical professional.

138.   Further, institutions are required to implement policies and procedures that enable transgender female inmates to shower, use the bathroom and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia.  28 C.F.R. §115.15(d).

139.   Defendants Wetzel, Tritt, Winguard and Harlow have failed to enforce these cross-gender supervision standards at DOC institutions.

140.   Ms. Burton has consistently been forced to walk to the shower inadequately covered and observed showering and changing clothes in her cell by male corrections officers and other inmates.

141.   Ms. Burton is routinely pat- and strip-searched by male corrections officers.

142.   Ms. Burton is not comfortable being searched by male officers, and has asked for searches of her person to be conducted by female officers, but her requests have been denied.

143.   Ms. Burton has repeatedly complained to DOC officials concerning the inappropriateness of male corrections officers searching her and the emotional distress it causes her.

144.   PREA requires that correctional institutions provide training about sexual abuse and sexual harassment to employees who have contact with inmates. The training must include instruction on the DOC's zero-tolerance policy for

sexual abuse and sexual harassment, prevention, detection, and reporting of sexual abuse and sexual harassment, the DOC's policies and procedures for responding to reports of sexual abuse and harassment, how to communicate effectively and professionally with transgender inmates, the right of inmates to be free from abuse and retaliation, the dynamics of abuse in confinement, and how to avoid inappropriate relationships with inmates. 28 C.F.R. §115.31.

145.   PREA additionally requires institutions to provide training to security staff on conducting searches of transgender inmates in a professional and respectful manner, and in the least intrusive manner possible. 28 C.F.R. §115.15(e).

146.   Upon information and belief, Defendants Wetzel, Tritt, Winguard and Harlow have failed to provide PREA-required training to corrections officers and staff, which has resulted in the pervasive sexual abuse and sexual harassment of Ms. Burton.

147.   Upon information and belief, Defendants Wetzel and Tritt continue to fail to adequately implement and/or enforce sufficient policies or procedures to prevent sexual abuse and sexual harassment of transgender inmates by corrections officers and other inmates, including policies or procedures requiring appropriate supervision, comprehensive training, thorough investigations into abuse allegations and effective disciplinary actions.

## H.     Personal Involvement of Defendants

148.   Defendant Wetzel is personally involved in the alleged misconduct by failing to adopt, implement and enforce policies and training to prevent foreseeable sexual abuse and harassment of transgender individuals incarcerated throughout the DOC, including but not limited to a failure to enforce or promulgate necessary policies related to appropriate supervision, individualized housing assessments, cross-gender viewing and searches, comprehensive training, thorough investigations and effective disciplinary actions.   These failures create a foreseeable and substantial risk of harm that was realized when Ms. Burton was sexually assaulted on two different occasions and which continues to place all transgender individuals incarcerated with the DOC, including Ms. Burton, at a substantial risk of future sexual abuse and harassment.

149.   Defendant Tritt is personally involved in the alleged misconduct by failing to adopt, implement and enforce policies and training to prevent foreseeable sexual abuse and harassment of transgender individuals incarcerated at SCI Frackville, including but not limited to a failure to enforce or promulgate necessary policies related to appropriate supervision, individualized housing assessments, cross-gender viewing and searches, comprehensive training, thorough investigations and effective disciplinary actions.   These failures create a foreseeable and substantial risk of harm which continues to place all transgender

individuals incarcerated at SCI Frackville, including Ms. Burton, at a substantial risk of future sexual abuse and harassment.

150.   Defendant Winguard is personally involved in the alleged misconduct by failing to adopt, implement and enforce policies and training to prevent foreseeable sexual abuse and harassment of transgender individuals incarcerated at SCI Somerset, including but not limited to a failure to enforce or promulgate necessary policies related to appropriate supervision, individualized housing assessments, cross-gender viewing and searches, comprehensive training, thorough investigations and effective disciplinary actions.   These failures created a foreseeable and substantial risk of harm that was realized when Ms. Burton was sexually assaulted by another inmate.

151.   Defendant Harlow is personally involved in the alleged misconduct by failing to adopt, implement and enforce policies and training to prevent foreseeable sexual abuse and harassment of transgender individuals incarcerated at SCI Albion, including but not limited to a failure to enforce or promulgate necessary policies related to appropriate supervision, individualized housing assessments, cross-gender viewing and searches, comprehensive training, thorough investigations and effective disciplinary actions.   These failures created a foreseeable and substantial risk of harm that was realized when Ms. Burton was sexually assaulted by Defendant Sparks.

## CAUSES OF ACTION

## COUNT I -
## Deprivation of Eighth Amendment Right to Be Free from Cruel and Unusual Punishment
### (Against Defendants Wetzel, Tritt, Winguard and Harlow)

152.   The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

153.   Defendants are aware of the need to protect inmates from sexual abuse and harassment by corrections officers, staff and other inmates.

154.   Defendants are also aware that transgender inmates are particularly vulnerable to sexual harassment and abuse.

155.   In failing to enact and enforce policies, properly investigate allegations of sexual abuse and appropriately discipline staff to prevent corrections officers, other staff, and inmates from sexually abusing and harassing inmates, Defendants were and continue to be deliberately indifferent to the risk of sexual abuse and harassment of transgender inmates, in violation of Ms. Burton's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments.

## COUNT II -
## Deprivation of Eighth Amendment Right to Be Free from Cruel and Unusual Punishment
### (Against Sinicky, Daramo, Sparks, Phillipi, Manes and Kropp)

156.   The allegations set forth in each and every preceding paragraph are

incorporated herein by reference.

157.   Defendants violated Ms. Burton's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution by subjecting her to sexual harassment and abuse.

**COUNT III -**
**Deprivation of Eighth Amendment Right to Be Free from Cruel and**
**Unusual Punishment**
**(Against John Doe 1 and John Doe 2)**

158.   The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

159.   Defendants violated Ms. Burton's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution through their deliberate indifference to her safety and the substantial risk of harm she faced as a transgender woman in a men's prison resulting in her rape by another inmate.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Burton requests that the Court grant the following relief:

1.     A declaratory judgment that Defendants violated Ms. Burton's rights under the Eighth and Fourteenth Amendments.

2.     Injunctive relief requiring Defendant Wetzel to transfer Ms. Burton to a women's prison.

3.     Injunctive relief requiring Defendants Wetzel and Tritt to enact and enforce additional policies to prevent sexual abuse and harassment of transgender inmates, including but not limited to additional training and supervision, effective discipline and more thorough investigations into allegations of sexual abuse;

4.     Compensatory damages;

5.     Punitive damages;

6.     Attorney's fees and costs; and

7.     Any other relief the Court deems just and proper.

Dated: September 26, 2016                     Respectfully submitted,


/s/ Alexandra Morgan-Kurtz
Alexandra Morgan-Kurtz
PA Attorney ID No. 312631
Pennsylvania Institutional Law
   Project
429 Forbes Ave, Suite 800
Pittsburgh, Pa 15219
T: (412) 434-6175
amorgan-kurtz@pailp.org


/s/ Sara J. Rose
Sara J. Rose
PA Attorney ID No. 204936
Witold J. Walczak
PA Attorney ID No. 62976
American Civil Liberties Union
   of Pennsylvania
247 Fort Pitt Blvd.
Pittsburgh, Pa 15222
T: (412) 681-7864
srose@aclupa.org
vwalczak@aclupa.org


/s/ Alexander R. Bilus
Alexander R. Bilus
PA Attorney ID No. 203680
Joshua W.B. Richards, Esq.
PA Attorney ID No. 204315
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA, 19102-2186
T: (215) 972-7777