# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NIARA BURTON,** | : | **Civil No. 1:16-CV-1953** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Schwab)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JOHN WETZEL, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

## I.    FACTUAL BACKGROUND

Broadly framed, this case presents substantial questions regarding how courts should reconcile issues of personal autonomy, gender identity, and personal privacy with the essential security requirements of the state correctional system. The plaintiff, Niara Burton, is a transgender inmate who has been confined in the Pennsylvania Department of Corrections since 2012 following her murder conviction in Philadelphia.  While incarcerated in the state prison system, Ms. Burton alleges that she has been subjected to acts of harassment, discrimination and retaliation based upon her gender identification, and her efforts to assert her rights.  These issues will be addressed and resolved through merits litigation conducted before our colleague, Chief Magistrate Judge Schwab.

Today, our task is a narrower, but nonetheless important undertaking. We are presented with a motion for preliminary injunction filed by the plaintiff, Niara Burton, which seeks to enjoin prison staff from retaliating against her for reporting alleged incidents of sexual harassment, abuse or misconduct. This request for preliminary injunctive relief arises in a very specific factual context, in which Burton asserts that she filed grievances against prison staff in May of 2017, and then was issued what she viewed as retaliatory misconduct citations and was disciplined based upon allegations that she had made false statements to prison staff in these grievances.

We have provided the parties with ample opportunity to develop the factual background and legal underpinning for this motion for preliminary injunction, and conducted a hearing on this motion on September 11, 2017, allowing all parties to fully present their respective motions on this request for extraordinary preliminary injunctive relief. Thus, this motion is now ripe for resolution.

The evidence presented at this hearing disclosed that Ms. Burton has been incarcerated in the state prison system since 2012. During that time she has filed more than 100 grievances against various prison staff protesting what Burton regarded as discriminatory or retaliatory conduct by prison officials based upon her gender identification. On September 26, 2016, these protests and grievances culminated in the filing of this lawsuit in federal court. (Doc. 1) This federal

lawsuit initially lodged three claims against prison officials, alleging that prison staff's treatment of Burton at various institutions rose to the level of cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The plaintiff has now amended her complaint, (Doc. 36-1) to assert additional Eighth Amendment claims and a First Amendment retaliation claim against prison officials. This First Amendment retaliation claim involves, in part, the conduct which forms the basis for this motion for preliminary injunction.

Briefly, the pertinent facts are as follows: In the Spring of 2017, Ms. Burton was transferred to the State Correctional Institution Coal Township (SCI Coal Township). Upon her arrival at this facility Ms. Burton was initially housed in the Restricted Housing Unit (RHU) at that institution.[1] Ms. Burton was also on hand-held camera status at this time, which meant that planned movements of Ms. Burton within the prison were routinely documented by video.

In addition to this video surveillance, security considerations within the RHU prescribed specific protocols for the movement of inmates like Burton. As a general practice, RHU inmates are strip searched prior to leaving their cells, in that the inmates are required to remove their garb inside their cells and pass it through a cell door wicket for inspection by staff. Staff also conduct a visual inspection of

---

[1] At the September 11 hearing conducted in this case, counsel reported that Ms. Burton is no longer housed in the RHU at SCI Coal Township. Therefore, the parties agreed that any requests for injunctive relief relating to her RHU placement are now moot.

the inmates through the cell door to ensure that the prisoners do not possess contraband or dangerous articles. Once this in-cell strip search inspection is completed, the inmates' clothing is returned to them through the cell door wicket, the inmates dress, restraints are applied to the prisoners, and they are removed from their RHU unit cells. Once outside the cells, RHU inmates were subject to a second pat-down frisk before they were moved for showers, recreation or other activities. These protocols were followed with all RHU inmates, including Ms. Burton while she was housed in the RHU at SCI Coal Township. However, in Ms. Burton's case the hand held videos depicting these prisoner movements did not depict the in-cell strip search. Videographers were instructed to refrain from documenting this portion of the cell movement process out of a concern for her privacy.

On two consecutive days in May, 2017—May 2 and 3—Burton had interactions with staff at SCI Coal Township as she was moved from her cell. Burton and prison officials had very different perceptions regarding these two interactions, both of which were captured on video, and these two interactions formed the basis for the following four events: First, the filing of two grievances by Burton against staff; second, submission of two disciplinary citations lodged against Burton by prison staff; third, the filing of the instant motion for preliminary injunction; and, finally, the filing of Burton's amended complaint.

The first of these two interactions took place on May 2, 2017, when Burton was moved from her cell and taken to the prison recreation yard. The second disputed cell movement occurred the following day, May 3, when Burton was removed from her cell for a shower. As discrete incidents, these two cell movements were perceived in very different ways by the parties. For her part, Ms. Burton filed grievances describing her subjective impressions of these two episodes. In her grievance relating to the May 2 cell transfer, Ms. Burton alleged that after she was removed from her cell, instead of conducting a pat-down frisk, a correctional officer "was fondling my body" and "rubbed my whole body not 'pat down' like he should." Stating that she felt violated by this conduct Burton lodged a grievance which demanded $1,000,000 and other relief from prison staff.

As for the May 3 incident, in her grievance relating to this episode, Ms. Burton stated that she was required to strip in the presence of four correctional officers, all of whom who she accused of voyeurism. Ms. Burton's grievance demanded $750,000 in damages and other relief from prison officials as a result of this alleged act of voyeurism.

Because the allegations in these two grievances included claims of sexual assault and harassment, prison officials believed that Burton's assertions triggered their responsibilities under the Prison Rape Elimination Act (PREA), to conduct an investigation into these claims. That investigation was undertaken by Lieutenant

Christopher Brownawell, the prison's designated PREA investigator. Lieutenant Brownawell's investigation led to findings that were entirely at odds with Ms. Burton's claims. At the outset, with respect to the May 2, cell movement, Brownawell interviewed all of the staff involved in this incident, who uniformly denied that Burton was fondled in any sexually suggestive way during the pat-down search of this inmate. Several potential inmate-witnesses identified by Burton were also interviewed but did not corroborate her account and recollection of this event.

With respect to the May 3 episode, which was the subject of Burton's second grievance, as part of his investigation Lieutenant Brownawell interviewed the staff involved in this inmate move, all of whom denied engaging in acts of voyeurism. The lieutenant also photographed Burton's cell from the location where several officers reported that they were standing when Burton performed her in-cell strip search, prior to being taken full clad to the showers. From the officers' reported location, the photograph revealed that Burton would not have been readily visible to these staff as she removed her clothing inside her cell for a strip search inspection before she was removed fully dressed from the cell.

Finding that Burton's allegations in these two grievances were false, Lieutenant Brownawell concluded that these assault allegations were unfounded, and further recommended that Burton be cited by misconduct, specifically for

making a false statement to staff. This recommendation was then adopted by prison staff; Burton received two misconduct citations for allegedly making false statements to staff; and following a June 2017 disciplinary hearing she was found guilty of these prison infractions and sentenced to two 30 day terms of disciplinary custody.

The parties appear to be in agreement that these were the first two instances in which Burton was cited for misconduct arising out of any allegedly false grievances she submitted to prison officials. The parties also appear to concede that there have been no further misconduct citations of this type lodged against Burton in the intervening four months since these two discrete episodes took place. Finally, the parties are in accord that these disciplinary sanctions have not deterred Burton from filing further grievances against prison staff relating to what she perceives to be staff misdeeds, malfeasance or nonfeasance. Quite the contrary, it is reported that Ms. Burton has continued to actively grieve other matters since May 2017.

With the parties' factual narratives concerning these two episodes cast in this stark conflict, each party has insisted that the videos depicting these two cell movements fully support their contrasting accounts of what transpired. As part of these proceedings, we have carefully scrutinized these videos on multiple occasions. In undertaking this video review, we are mindful that these events are

now inextricably intertwined with the merits litigation in this case given the amended complaint filed by the plaintiff. We are also cognizant of the fact that our colleague, Judge Schwab, will be obliged to address these videos in greater evidentiary detail as she conducts merits litigation of these retaliation claims which are now encompassed in Burton's amended complaint. All of these considerations caution against excessive commentary by this court regarding this evidence. However, suffice it to say that our own independent review of this video evidence finds that the video has an equivocal quality which does not lend itself to a finding that the plaintiff has carried her burden of proof and persuasion on this motion for preliminary injunction based solely upon the videos themselves.[2]

---

[2] In part, the limited evidentiary value of the videos is a function of perspective. On May 2, the video depicting the pat-down frisk was taken from a vantage point behind both Burton, and the officer who was standing behind Burton and conducting the frisk. Thus, it is not possible to view in detail the placement of the officer's hands on Burton, other than to observe that the entire pat-down frisk is not prolonged and takes only a few seconds to complete. As for the video of the May 3 incident, it is recorded from a vantage point that does not permit a view into Burton's cell where she disrobed during the in-cell strip search inspection. This recording perspective, which was done to avoid gratuitous depictions of Burton in the nude, also limits the value of the video as proof of voyeurism since it does not provide any perspective regarding whether any other staff beyond the officer conducting the strip search inspection could observe Burton in the nude. The May 3 video does capture the voice of a correctional officer who is standing a short distance from Burton's cell stating at one point in time that he will take a "peek," but that officer is not seen approaching Burton's cell window while she was disrobed and Lieutenant Brownawell has testified in his deposition that his investigation revealed that the officer was referring to looking at the other showers in the cellblock to determine whether the inmates using those showers had completed their showers.

It is against this factual backdrop that we consider the instant motion for preliminary injunction. That motion invites the court to enter an order enjoining prison staff from retaliating against Burton for reporting alleged incidents of sexual harassment, abuse or misconduct, and in the particular factual context of this case would seek to specifically enjoin officials from citing Burton for making false statements to staff when those false statements relate to assertions made by Burton in any grievance she may choose to file in the future. This broadly framed request for prospective relief comes before us against a factual background which reveals that the subject matter of this preliminary injunction motion related to two specific, discrete and factually disputed grievances and misconduct citations pertaining to inmate movements on May 2 and 3, 2017. Further, the constellation of factors presented in May of 2017—contested grievances followed by misconduct citations for making false statements—has not reoccurred, and nothing about these two isolated instances in the Spring of 2017 has apparently deterred or prevented Burton from continuing to actively grieve and litigate claims that she may have against prison officials.

On these facts, for the reasons set forth below, the motion for preliminary injunction will be DENIED.

## II.    DISCUSSION

### A.    Preliminary Injunction Rule 65– The Legal Standard

Burton's motion for preliminary injunction is governed by Rule 65 of the Federal Rules of Civil Procedure and is judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained:  "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest."  Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)).  See also Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 170-71 (3d Cir. 2001); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa.  Sept. 24, 2006) (denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right.  Kerschner v. Mazurkewicz, 670 F.2d 440, 443 (3d Cir. 1982) (affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials).  It is an extraordinary remedy.  Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party.  As

a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.' " <u>Emile</u>, 2006 WL 2773261, at * 6 (<u>quoting Campbell Soup Co. v. ConAgra, Inc.</u>, 977 F .2d 86, 91 (3d Cir.1992)). Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." <u>Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53</u>, 520 F.2d 1220, 1230 (6th Cir.1975), <u>cert. denied</u>, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." <u>Madison Square Garden Corp. v. Braddock</u>, 90 F.2d 924, 927 (3d Cir.1937).
>
> <u>Emile</u>, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain this burden of proof that she is entitled to a preliminary injunction under Fed.R.Civ.P. 65, she must demonstrate both a reasonable likelihood of success on the merits, and that she will be irreparably harmed if the requested relief is not granted. <u>Abu-Jamal v. Price</u>, 154 F.3d 128, 133 (3d Cir. 1998); <u>Kershner</u>, 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits

and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute. Specifically, 18 U.S.C. §3626 limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.
>
> 18 U.S.C. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are also instructed that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice

12

system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

With respect to this first essential element which must be proven by a movant seeking a preliminary injunction, a reasonable probability of success on the merits: "To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action. See Punnett v. Carter, 621 F.2d 578, 582–83 (3d Cir.1980). Whether success is likely requires examination of the legal principles controlling the claim and potential defenses available to the opposing party. See BP Chems., 229 F.3d at 264." McCahon v. Pennsylvania Tpk. Comm'n, 491 F. Supp. 2d 522, 526 (M.D. Pa. 2007). Thus in order to satisfy this element of its proof on this motion for preliminary injunction, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a Prima facie case showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975) holding modified by Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994). However, "[a]lthough the plaintiff need not prove their case with 'airtight certainty,' the moving party nevertheless 'bears a heavy burden on a motion for a preliminary injunction.'

Punnett v. Carter, 621 F.2d 578, 588 (3d Cir. 1980)." Synthes, Inc. v. Gregoris, 228 F. Supp. 3d 421, 429 (E.D. Pa. 2017)

In addition, to the extent that the plaintiff seeks a preliminary injunction she must also show that she will be irreparably injured by the denial of this extraordinary relief. With respect to this second benchmark standard for a preliminary injunction, in this context it is clear that:

> Irreparable injury is established by showing that plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the plaintiff must show *immediate* irreparable injury, which is more than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted).

Messner, 2009 WL 1406986, at *4 .

Thus, the harm which is to be prevented by the injunction may not be speculative or conjectural. Instead, in order to secure a preliminary injunction, "[a]ny irreparable harm must be imminent. Cont'l Grp., Inc. v. Amoco Chems. Corp., 614 F.2d 351, 359 (3d Cir. 1980) ('The requisite for injunctive relief has been characterized as a clear showing of *immediate* irreparable injury or a presently existing actual threat.') (emphasis added) (internal quotations omitted); see also, e.g., StrikeForce Techs., Inc. v. WhiteSky, Inc., No. 13-1895, 2013 WL 2658859, at *5 (D.N.J. June 11, 2013) (declining to issue preliminary injunction where plaintiff failed to make 'a clear demonstration' of the imminent threat of disclosure or confidential information). This demands a fact-specific inquiry. See, e.g., Laidlaw, Inc. v. Student Transp. of Am., Inc., 20 F.Supp.2d 727, 766–67 (D.N.J. 1998) ('[I]rreparable harm is not automatically presumed from a finding that plaintiffs have a likelihood of success on the merits; rather, the court must still make a careful examination of the particular facts.')." Synthes, Inc. v. Gregoris, 228 F. Supp. 3d 421, 440 (E.D. Pa. 2017).

Furthermore, several other basic legal tenets guide our discretion in this particular case, where an inmate seeks to enjoin a wide array of non-parties and requests relief which goes beyond merely preserving the *status quo* in this litigation, but seeks to impose new, mandatory conditions on prison officials.

For example, an injunction against non-parties, like the injunction sought here, requires a specific legal showing. To the extent that Burton seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996).

Similarly, where the requested preliminary injunction "is directed not merely at preserving the *status quo* but...at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Thus, a request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518 (3d Cir. 1995). Furthermore, it is well-settled that "[t]he purpose of a preliminary injunction is to preserve the *status quo*, not to decide the issues on their merits." Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997). Therefore, in a case such as this, where the inmate-"plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . . Complaint, . . . [the] plaintiff cannot

demonstrate that [s]he will suffer irreparable harm if [s]he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this court, upon consideration of defendants' motion[s] . . ., or at trial. As a result, plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5.

In assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d at 443. Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. Emile, 2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir. 2001)).

### B. Burton Has Not Carried Her Burden of Proof and Persuasion on This Motion for Preliminary Injunction

When weighed against the exacting standards prescribed by Rule 65, we find that Burton has not made a sufficient showing to warrant the injunctive relief she seeks.

At the outset, turning to Rule 65 first controlling consideration, whether the plaintiff has shown a reasonable probability of success on the merits of her retaliation claims, we note that "[a]lthough the plaintiff need not prove their case with 'airtight certainty,' the moving party nevertheless 'bears a heavy burden on a

motion for a preliminary injunction' [of establishing a reasonable probability of success on the merits] <u>Punnett v. Carter</u>, 621 F.2d 578, 588 (3d Cir. 1980)." <u>Synthes, Inc. v. Gregoris</u>, 228 F. Supp. 3d 421, 429 (E.D. Pa. 2017). In the instant case, this burden of establishing a likelihood of success on the merits is particularly heavy since we view Burton's request as seeking a form of mandatory injunction which, if granted, would place new and different burdens and responsibilities on a host of non-parties, since it would proscribe all correctional staff from pursuing certain types of inmate discipline against Burton for an indefinite period into the future. Where the requested preliminary injunction "is directed not merely at preserving the *status quo* but. . . at providing mandatory relief, the burden on the moving party is particularly heavy." <u>Punnett v. Carter</u>, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly, <u>United States v. Price</u>, 688 F.2d 204, 212 (3d Cir. 1982), and a request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." <u>Goff v. Harper</u>, 60 F.3d 518 (3d Cir. 1995).

In assessing the likelihood of Burton's success on the merits of her claims, which arise in the factual context of prison disciplinary citations, it is also important to note that Burton faces an exacting burden of proof in advancing this

particular prison discipline First Amendment retaliation claim since a prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid §1983 civil rights cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles also directly apply to inmate retaliation claims stemming from prison disciplinary proceedings. A prisoner claiming that prison officials have retaliated against her for exercising her constitutional rights must prove the following three elements: (1) the conduct in which she engaged was constitutionally protected; (2) she suffered adverse action at the hands of prison officials; and (3) her constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152,

158 (3d Cir. 2002). With respect to the obligation to demonstrate that she suffered an adverse action, a plaintiff must demonstrate that she suffered action that "was sufficient to deter a person of ordinary firmness from exercising h[er] rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244 (3d Cir. 2010).

Thus, a prison disciplinary retaliation claim cannot be considered in the abstract or solely from the subjective perspective of the inmate-plaintiff, but must also take into account the question of whether there is some evidence which supports the disciplinary finding, since the presence of some evidence supporting that disciplinary decision effectively checkmates a retaliation claim. This legal principle is important here since, as we have observed, the parties' competing

perspectives regarding the May 2 and 3, 2017, incidents stand in stark contrast to one another. In fact, Ms. Burton's account of these two incidents has been contradicted by every other inmate or correctional witness questioned in the course of the PREA investigation. This body of countervailing witness statements may well constitute some evidence supporting the finding that Burton's statements were knowingly false. Further, the immutable evidence of these two encounters, the prison videos, are in our view equivocal and do not lend themselves to a finding that Burton has met her heavy burden of establishing a sufficiently high probability of ultimate success on the merits relating to these May 2017 episodes to warrant extraordinary mandatory injunctive relief on these retaliation claims at the outset of the merits litigation of those claims.[3] Furthermore, to the extent that Burton invites us to find that she stands a reasonable probability of success challenging future potential misconduct citations as retaliatory, we will decline this invitation since it is impossible to determine whether any potential future citations are factually justified and supported by some evidence.

But even if we found that Burton had carried her threshold burden of proof on this issue, it is clear that she must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v.

_____

[3] Of course nothing in these findings is meant to convey in any way, or should be construed as conveying in any way a view concerning the ultimate merits of any retaliation claim. Instead, those merits determinations should be left in the first instance to the presiding judge in this case, Chief Magistrate Judge Schwab.

Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)).  In our view, at present Burton's motion for preliminary injunction irretrievably fails on this second element prescribed by Rule 65 since Burton simply has not shown that hers is a narrowly tailored request for injunctive relief which is needed to prevent imminent irreparable harm.

On this score, Burton encounters a series of legal and factual obstacles. First, in order for Burton to prevail on this motion "[a]ny irreparable harm must be imminent."  Synthes, Inc. v. Gregoris, 228 F. Supp. 3d 421, 440 (E.D. Pa. 2017). Here, the facts just do not support a finding of an immediate, on-going and imminent risk of irreparable harm.  Quite the contrary, this motion for preliminary injunctive relief rests entirely upon disputes between the parties relating to isolated events, the treatment of two grievances which were submitted by Burton on May 2 and 3, 2017, more than four months ago.  While those grievances led to disciplinary citations against Burton in June of 2017, they have not deterred her from filing further grievances since May 2017, and none of those additional grievances have led to similar disciplinary citations.  On these facts, where months have passed without event following these incidents which inspired this motion for preliminary injunction, we simply cannot find that there is an *imminent* risk of irreparable injury.

Moreover, while we do not in any way diminish Burton's complaints, given the specific, discrete past nature of the events which inspired this motion for preliminary injunction we further find that Burton has not carried her burden of proving that any current *irreparable* harm justifying a preliminary injunction. <u>See e.g.</u>, <u>Rivera v. Pennsylvania Dep't. Of Corrections</u>, 346 F. App'x 749 (3d Cir. 2009)(denying inmate request for injunction); <u>Rush v. Correctional Medical Services, Inc.</u>, 287 F. App'x 142 (3d Cir. 2008)(same). In this regard, when considering this benchmark standard for a preliminary injunction, it is clear that: "Irreparable injury is established by showing that plaintiff will suffer harm that 'cannot be redressed by a legal or an equitable remedy following trial.' <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 801 (3d Cir.1989) ('The preliminary injunction must be the only way of protecting the plaintiff from harm')." <u>Messner</u>, 2009 WL 1406986, at *4. In this context, the word irreparable has a specific meaning and connotes "that which cannot be repaired, retrieved, put down again, [or] atoned for . . . ." <u>Acierno v. New Castle County</u>, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Thus, an injunction will not issue "simply to eliminate the possibility of a remote future injury . . . ." <u>Acierno</u>, 40 F.3d at 655 (citation omitted). Therefore, where an inmate-plaintiff is alleging that damages may be an adequate remedy, a preliminary injunction is often not appropriate since the inmate has not shown that she faces immediate, *irreparable* harm. <u>Rivera v.</u>

Pennsylvania Dep't. Of Corrections, 346 F.App'x 749 (3d Cir. 2009); Rush v. Correctional Medical Services, Inc., 287 F.App'x 142 (3d Cir. 2008). This principle is directly applicable here. In the instant case, when Burton grieved these two incidents on May 2 and 3, 2017, she asserted a claim for damages totaling $1,750,000. Burton's assertion that she could be compensated for these injuries through damages suggests that, at least with respect to these events in early May 2017, the plaintiff has alleged that damages may be adequate redress, yet another factor which weighs against extraordinary injunctive relief.

Furthermore, given the allegations of retaliation made in Burton's amended complaint, which parallel the allegations now made here in this motion for preliminary injunction, the "plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . . Complaint, . . . [In such circumstances the] plaintiff cannot demonstrate that [s]he will suffer irreparable harm if [s]he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this court, upon consideration of defendants' motion[s] . . ., or at trial. As a result, plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5. In this case, as we view it, much of the preliminary injunctive relief sought by Burton now directly relates to the merits of some of the ultimate issues in this lawsuit. Since the ultimate issues in this lawsuit are

inextricably intertwined with the assertions in this motion for injunctive relief, a ruling on the motion might be perceived as speaking in some way to the ultimate issues in this case. In such instances we should refrain from prematurely granting such relief.

In addition, we believe that the nature of the claims made here, and the relief sought in this preliminary injunction motion, combine to caution against issuing extraordinary, interim injunctive relief. At bottom, Burton's claims now include First Amendment retaliation claims which allege that the defendants retaliated against the plaintiff by imposing discipline upon Burton in May and June of 2017 for allegedly making false statements to prison staff in grievances. The preliminary injunctive relief that Burton seeks would be an injunction which would forbid staff prospectively from ever disciplining Burton for allegedly making false statements in grievances.

Such relief would be overly broad and run afoul of the legal principles governing inmate preliminary injunctions, as set forth in 18 U.S.C. § 3626(a)(2)., which provides that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

Burton's prayer for relief, which would enjoin prison officials from citing her for misconduct in the future based upon any false statements made in grievances, is overly broad because it does not fully take into account the legal tenets which govern such prison disciplinary retaliation claims. While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244 (3d Cir. 2010).

Given this case law, an injunction which prohibits prison staff from citing Burton for any future misconduct based upon allegedly false statements in grievances is far too sweeping in its scope. Such an injunction would preclude prison officials from lodging such misconduct citations even when those citations have merit, and would effectively immunize Burton from any disciplinary citation for any statements made in grievances, no matter how unwarranted those

statements might be.  Thus, an injunction which, in effect, prospectively forbids prison staff disciplining an inmate for making false statements in grievances ignores the fact that an inmate's retaliation claim often fails in this setting when "there is 'some evidence' supporting the guilty findings."  Nifas v. Beard, 374 F.App'x 241, 244 (3d Cir. 2010).  In short, under the prevailing legal standards governing prison disciplinary retaliation claims, a finding that a misconduct citation was meritorious effectively checkmates a retaliation claim.  These legal benchmarks suggest that any determination regarding whether a particular disciplinary action was retaliatory is a very fact-specific undertaking which must examine the underlying alleged misconduct by the inmate, and is not amenable to broadly framed prospective injunctive relief which would potentially bar the filing of meritorious misconduct citations.

Finally, we also note that granting this injunctive relief, which would effectively have the federal courts making *ad hoc*, and individual, decisions concerning the treatment of a single prisoner, could harm both the defendants' interest.  In this prison context, the defendants' interest in penological order could be adversely effected if the Court began dictating the treatment for the plaintiff, one inmate out of thousands in the state prison system, and essentially immunizing a single inmate from a specific category of disciplinary citations.  Therefore, consideration of "whether granting preliminary relief will result in even greater

harm to the nonmoving party," Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994), also weighs heavily against Burton in this case.[4]

An appropriate order follows.

## III. Order

For the forgoing reasons, the plaintiff's motion for preliminary injunction, (Doc. 30) is DENIED without prejudice to renewal of this motion on a *de novo* standard of review before the presiding judge in this case, Chief Magistrate Judge Schwab, at a later date. IT IS FURTHER ORDERED that the plaintiff's motion to strike designation of deposition excerpts in connection with this preliminary injunction motion, (Doc. 53) is DISMISSED as moot in light of our ruling on this motion for preliminary injunction.

So ordered this 27th day of September 2017.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

---

[4] Given Burton's failure to "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted," Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)), we need not address the final factor prescribed by Rule 65; namely, how an injunction may affect the public's interest, beyond observing that the public has strongly held interests both in the protection of First Amendment freedoms and in maintaining safety and order in correctional facilities. Therefore, in this case, the competing public interests stand in equipoise.