# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NIARA BURTON, | : | **CIVIL NO.: 1:16-CV-01953** |
| Plaintiff, | : | |
| v. | : | (Chief Magistrate Judge Schwab) |
| JOHN WETZEL, *et al.*, | : | |
| Defendants. | : | |

# **MEMORANDUM**

## I. Introduction.

In this 42 U.S.C. § 1983 civil rights action, *pro se* plaintiff Niara Burton ("Ms. Burton"), a transgender inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), alleges that Secretary John Wetzel and other officials and staff members of the DOC (collectively referred to as "defendants") are responsible for failing to prevent or otherwise subjecting her to foreseeable sexual harassment and abuse, for retaliating against her when she filed grievances reporting such abuse, and for denying her necessary medical treatment, including gender affirming surgery. In connection with these allegations, Ms. Burton asserts a deprivation of her rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as violations of the Prison Rape Elimination Act, 42 U.S.C. § 15601. *Doc. 55*.

Presently, we consider the defendants' motion to dismiss the case for lack of prosecution. For the reasons that follow, we will deny the defendants' motion.

**II. Background and Procedural History.**

Ms. Burton commenced this action on September 26, 2016, by filing, through counsel, a complaint pursuant to 42 U.S.C. § 1983, alleging that the Defendants deprived her of rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. *Doc. 1*. On May 2, 2017, the parties consented to proceed before a United States Magistrate Judge (*doc. 20*), and shortly thereafter the matter was referred to the undersigned. *Doc. 21*.

On July 25, 2017, Ms. Burton filed a motion for a temporary restraining order and/or a preliminary injunction. *Doc. 30*. Ms. Burton's motion sought to enjoin the defendants "from taking any adverse action against her … in retaliation for filing grievances reporting sexual abuse and harassment." *Id.* at 1. The motion further sought to compel the defendants to release her from restrictive housing. *Id.* On September 27, 2017, Magistrate Judge Martin C. Carlson, writing for this court, denied the plaintiff's motion. *Doc. 57*. Judge Carlson reasoned that Burton had not met her "heavy burden of establishing a sufficiently high probability of ultimate success on the merits." *Id.* at 22. Judge Carlson further reasoned that even if she had established a high probability of success on the merits, she could

2

still not obtain the preliminary injunction because she had not shown "that hers is a narrowly tailored request for injunctive relief which is needed to prevent imminent irreparable harm." *Id.* at 23. The defendants subsequently filed a motion to recover their attorney's fees for litigating the preliminary injunction (*doc. 60*), which we denied on August 14, 2018. *Doc. 82*.

While her injunctive motion was still pending, Ms. Burton filed a motion for leave to amend her complaint. *Doc. 36*. On September 26, 2018, we granted her motion and docketed her proposed amended complaint. *See docs. 54-55*. Ms. Burton's amended complaint incorporates a new count asserting a deprivation of her First Amendment right to petition the government for redress of grievances. *Doc. 55* ¶¶ 208-13.

Shortly after the court denied Ms. Burton's motion for a preliminary injunction and Ms. Burton filed her amended complaint, Ms. Burton's attorneys jointly filed a motion to withdraw from the case because (1) Ms. Burton had lost confidence in their representation, (2) the attorney-client relationship had broken down, and (3) Ms. Burton demanded that the attorneys take actions "with which they have a fundamental disagreement." *Doc. 66*. On January 2, 2018, we granted counsel's motion to withdraw and conditionally granted Ms. Burton's motion to appoint counsel, directing the Clerk of Court to forward the case to the Federal Bar Association for the purpose of trying to find *pro bono* counsel to represent Ms.

Burton. *Doc. 74.* On March 7, 2018, we informed the parties that the Federal Bar Association had been unsuccessful in securing *pro bono* counsel to represent Ms. Burton, and therefore informed Ms. Burton that she would have to litigate the case *pro se*. *Doc. 78.* Since that time, Ms. Burton has filed three documents—one letter and two motions—requesting that this court stay the case until such time as she can secure counsel. *See docs. 79, 87, 91.* We address Ms. Burton's motions to stay in a separately docketed order.

The defendants filed the instant motion to dismiss for lack of prosecution on August 15, 2018 (*doc. 83*), along with a supporting brief on August 27, 2018 (*doc. 88*). Ms. Burton did not respond to the defendants' motion in a timely response, neglecting to do so until October 25, 2018. *Doc. 90.* Thereafter, Ms. Burton filed two more motions opposing the defendants' motion to dismiss. *See docs. 92-93.* We analyze the defendants' motion below.

**III. Discussion.**

"Federal Rule of Civil Procedure 41(b) permits a District Court to dismiss a plaintiff's case for failure to prosecute." *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008) (citing Fed.R.Civ.P. 41(b)). An involuntary dismissal of a case, however, is a "drastic" sanction. *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 867 (3d Cir. 1984).

In considering whether to involuntarily dismiss a case under Rule 41, a court must consider "(1) the extent of the *party* 's personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense." *Poulis*, 747 F.2d at 868 (emphasis in original). "[N]o single *Poulis* factor is dispositive," and "not all of the *Poulis* factors need to be satisfied in order to dismiss a complaint." *Briscoe*, 538 F.3d at 263. In addition, "it is imperative that the District Court have a full understanding of the surrounding facts and circumstances pertinent to the *Poulis* factors before it undertakes its analysis." *Id.* at 258.

Turning to the first *Poulis* factor, the defendants point to the fact that Ms. Burton has requested to stay the case on multiple occasions, despite her awareness that the court was unable to find *pro bono* counsel to represent her, to suggest that Ms. Burton bears significant personal responsibility for her failure to move the case forward. While it is true that a *pro se* plaintiff is personally responsible for her failure to move a case forward, *see Briscoe*, 538 F.3d at 258, we cannot ignore the fact that Ms. Burton had counsel when she filed this case but no longer has counsel now. Seen in that context, Ms. Burton's multiple requests to stay the case

5

until she secures counsel indicate her awareness that moving forward with the case will be difficult without counsel, rather than her intent not to move the case forward at all. While Ms. Burton still bears the ultimate responsibility for her failure to move the case forward, this factor does not strongly weigh in favor of dismissal.

With regard to the second *Poulis* factor, prejudice to the other party, the defendants vaguely assert that "[m]emories fade and employees retire or move on from the Department." *Doc. 88* at 4. We construe the defendants' argument to be that they are prejudiced by the delays in the case because the evidence in the case will become less reliable over time. However, given the lack of facts that the defendants have asserted to prove prejudice, we find that the second *Poulis* factor weighs against dismissal of the case.

For the third *Poulis* factor, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Briscoe*, 538 F.3d at 260 (quoting *Adams v. Trs. of N.J. Brewery Emps. Pension Tr. Fund* 29 F.3d 863, 874 (3d Cir. 1994)). "[C]onduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness." *Id.* at 261 (quoting *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984)). The defendants again point to Ms. Burton's multiple requests to stay the case, as well as the fact that she

made such requests by letter, rather than motion, as establishing her history of dilatoriness. *Doc. 88* at 4. While we acknowledge the defendants' argument, as well as Ms. Burton's significant delay in filing a brief in opposition to the defendants' motion to dismiss, we do not find that Ms. Burton's actions constitute the "extensive … delay or delinquency" necessary to establish a history of dilatoriness. *See Briscoe*, 538 F.3d at 260. The third *Poulis* factor thus does not weigh in favor of dismissal.

Similarly, we do not think Ms. Burton's conduct was willful or in bad faith. To determine whether a litigant's actions were willful or in bad faith for purposes of the fourth *Poulis* factor, "the District Court must consider whether the conduct was 'the type of willful or contumacious behavior which was characterized as flagrant bad behavior." *Id.* at 262 (quoting *Adams*, 29 F.3d at 875). "Generally, 'willfulness involves intentional or self-serving behavior.'" *Id.* (quoting *Adams*, 29 F.3d at 875). "If the conduct is merely negligent or inadvertent, we will not call the conduct 'contumacious.'" *Id.* As evidence of her bad faith, the defendants again point to the fact that Ms. Burton filed a request to stay the case by letter, rather than motion, despite instructions from the court to make such a request by motion. *Doc. 88* at 5. Ms. Burton has indicated to the court by letter both that she has been having trouble with her mail while in prison (*doc. 86*) and that she has been confused about the procedural posture of the case (*doc. 89*). Moreover, we

7

take judicial notice of the recent changes to the prison mail policy made by the Pennsylvania Department of Corrections. Given these facts, we find Ms. Burton's conduct to be "merely negligent or inadvertent," *Briscoe*, 538 F.3d at 260, and thus find that the fourth *Poulis* factor does not weigh in favor of dismissal.

With regard to the fifth *Poulis* factor, the defendants are correct that in a case involving a *pro se* plaintiff, no alternative sanctions exist "because monetary sanctions, including attorney's fees, 'would not be an effective alternative.'" *Id.* at 262-63 (quoting *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002)). The fifth *Poulis* factor thus weighs in favor of dismissal.

Finally, the sixth *Poulis* factor requires an analysis of "the *meritoriousness* of the claim or defense." *Poulis*, 747 F.2d at 868 (emphasis in original). A claim or defense is meritorious "when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Briscoe*, 538 F.3d at 263. This standard is borrowed from "the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Id.* The defendants argue that this factor is neutral in this case since dispositive motions have not yet been filed, but we disagree. Ms. Burton's claims would clearly be sufficient to survive a Rule 12(b)(6) motion to dismiss. We find this especially clear in light of the fact that the defendants did not file a Rule 12(b)(6) motion to dismiss in this case: if the defendants thought the case did not state a claim upon which relief could be

8

granted sufficient to survive a Rule 12(b)(6) motion to dismiss, then they almost certainly would have filed such a motion; their failure to do so is telling. We therefore find that the sixth and final *Poulis* factor does not weigh in favor of dismissal.

Thus, the second, third, fourth, and sixth factors weigh against dismissal of the case, while the first and fifth factors weigh in favor of dismissal, though the first only slightly. Considering those six factors together, we find that Ms. Burton's case should not be dismissed for failure to prosecute.

**IV. Conclusion.**

Based on the foregoing analysis, we will deny the defendants' motion to dismiss for lack of prosecution (*doc. 83*). An appropriate implementing order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Chief Magistrate Judge
